UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **Brooklyn Larice Poston,** | ) Civil Action No.: 4:24-cv-7296-JD |
| Plaintiff, | ) |
| v. | ) COMPLAINT |
| **Equifax Information Services, LLC,** | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

## COMPLAINT

1. This is an action brought by Plaintiff, Brooklyn Larice Poston, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Brooklyn Larice Poston, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, SC 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and inaccurate information from the Plaintiff's credit file, and failed to investigate Plaintiff's disputes. Defendant repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## FACTUAL ALLEGATIONS

15.     On or about July 19, 2019, Anderson Brothers Bank brought a collection action against Plaintiff.  *See Anderson Brothers Bank v. Brooklyn Larice Poston, State of South Carolina, Florence County Case No.: 2019-CP-21-01994.*   Thereafter, the parties entered into an agreement which resolved the collection action matter, and the collection action was dismissed with prejudice on September 10, 2021.

16.     On or about February 7, 2022, after the collection matter was dismissed with prejudice, Plaintiff learned that the same Anderson Brothers Bank account, account number ending 6144 ("Account"), was being reported incorrectly on his Equifax credit report as a derogatory, charged-off account with a past due balance of $160,224.

17.     Between February 15, 2022 and November 22, 2022, in an effort to have the inaccurate Account removed from his Equifax credit report, Plaintiff sent four written disputes to Equifax, wherein he stated the Account had been involved in litigation and was to be deleted from his credit report.  Included with his fourth written dispute, Plaintiff provided a copy of the dismissal of the collection lawsuit brought by Anderson Brothers Bank.

18.     Equifax never removed the incorrectly reporting Account from Plaintiff's credit report.  Therefore, on April 18, 2023, Plaintiff filed a lawsuit against Equifax for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.  *See, Brooklyn Larice Poston v. Equifax Information Services, LLC,* U.S. District Court, Florence Division Civil Action No.: 4:23-cv-01612-RBH.

19.     Plaintiff and Equifax reached a settlement in the District Court case which resulted

in the Account being removed from Plaintiff's Equifax credit reports. Thereafter, the case was dismissed with prejudice on August 10, 2023.

20.    In July 2024, Plaintiff made the decision to relocate his current business back to Johnsonville and open a new auto repair shop. In order to construct a waiting area next to the repair shop for his customers to use while their vehicles were being serviced, Plaintiff applied for a loan with Lendmark Financial Services in the amount of $10,440.00.

21.    On July 31, 2024, Lendmark Financial Services did a hard inquiry of Plaintiff's Equifax credit report and thereafter, denied Plaintiff's application for the loan due to delinquencies reporting on his Equifax credit report.

22.    Upon being denied, Plaintiff immediately checked his Equifax credit report and discovered the inaccurate, disputed Account was once again being reported as a charged-off account with a balance of $160,224 that belonged to Plaintiff.

23.    Plaintiff also checked his Equifax credit report history on Credit Karma and learned that the Account had been reinserted onto his Equifax credit report sometime prior to April 28, 2024. Then, at some point between April 28, 2024, and May 1, 2024, the Account was removed. Finally, the Account was reinserted back onto Plaintiff's Equifax credit report sometime between May 1, 2024, and May 8, 2024.

24.    Defendant never notified Plaintiff that the Account had been reinserted or removed from his credit file.

25.    On or about August 8, 2024, Plaintiff obtained a copy of his Equifax credit report online wherein Defendant was reporting the Account as belonging to Plaintiff and as a charged-off account since May 2019, with a past balance due of $160,224.

26. Plaintiff immediately submitted an online dispute with Defendant stating the Account was not his account, that he did not owe any money on the Account and that the Account had been previously removed from his credit report.

27. Anxious to see if his Equifax credit report had been corrected so he could move forward with the plans for his business, Plaintiff checked Credit Karma on August 14, 2024. At that time, Defendant was still reporting the Account as a charged-off account with 48 missed payments and currently late.

28. On or about August 15, 2024, Plaintiff received the results of Defendant's alleged reinvestigation into his dispute wherein Defendant informed Plaintiff that Anderson Brothers Bank had verified the Account belonged to Plaintiff and updated the Additional Information, Balance, Past Due, and Date of Major Delinquency 1st Reported fields. Specifically, the Balance was reported as $0, but the charge off amount continued to show $160,224.

29. Upon receiving Defendant's results of its alleged reinvestigation into his dispute, Plaintiff submitted a second online dispute of the Account with Defendant.

30. On or about August 20, 2024, Plaintiff received the results of Defendant's alleged reinvestigation into his second online dispute. Defendant informed Plaintiff that Anderson Brothers Bank verified the Account as belonging to Plaintiff and modified Additional Information and Account History fields. As a result, Defendant continued reporting the inaccurate, disputed Account as belonging to Plaintiff and as a charged-off account with a charged-off amount of $160,224 on Plaintiff's Equifax credit report.

31. On or about September 4, 2024, Plaintiff sent his first written dispute letter to

Defendant wherein he informed Defendant that he had applied for a loan and been denied. Plaintiff also informed Defendant that the Account had been wrongfully added back to his Equifax credit report and was reporting as a charged-off account with 48 missed payments. Plaintiff informed Defendant the Account was not his account and that the Account was previously involved in litigation and by agreement was to be permanently removed from Plaintiff's Equifax credit report.

32. On or about September 14, 2024, as part of Defendant's plan and scheme to avoid its obligations under the FCRA, Defendant sent Plaintiff a letter stating it was unable to locate a credit file in the database with the identification information provided. As a result, Defendant requested Plaintiff provide two items, one verifying Plaintiff's identity and the other verifying his current address.

33. Plaintiff's September 4, 2024, dispute letter contained Plaintiff's Equifax confirmation number which directly links to Plaintiff's Equifax credit file. Therefore, at the time Defendant sent it's letter to Plaintiff, Defendant had all of the information necessary to investigate Plaintiff's dispute.

34. Defendant never investigated Plaintiff's September 4, 2024, written dispute.

35. Frustrated that the Account was still reporting on his Equifax credit report and that Defendant never investigated his written dispute, Plaintiff did a third online dispute with Defendant on October 8, 2024, wherein Plaintiff disputed the Account as not his account.

36. On or about October 11, 2024, Plaintiff received the results of Defendant's alleged reinvestigation into his October 8, 2024, dispute. In these results, Defendant informed Plaintiff that it had verified the Account belongs to him and that the Account was updated.

37.     On or about October 23, 2024, Plaintiff sent a second written dispute letter to Equifax. In this second letter, Plaintiff again informed Defendant that he had applied for a loan and it was denied due to the Account being wrongfully added back to his Equifax credit report. Plaintiff also set out his previous online and written disputes with Defendant. Plaintiff disputed the Account as not his account, and informed Defendant the Account was previously involved in litigation and by agreement was not to be reported on his Equifax credit report. Finally, Plaintiff included his Equifax confirmation number, his complete address, full social security number, and his date of birth.

38.     On or about October 28, 2024, as part of Defendant's plan and scheme to avoid its obligations under the FCRA, Defendant again sent Plaintiff a letter stating it was unable to locate a credit file in its database with the identification information provided. As a result, Defendant requested Plaintiff provide two items, one verifying Plaintiff's identity and the other verifying his current address.

39.     On or about the same day, October 28, 2024, Plaintiff received a second letter from Defendant, wherein Defendant stated it had received Plaintiff's recent dispute concerning the Account. Defendant informed Plaintiff that its records showed Plaintiff had already disputed the Account at least twice within the last 90 days and the disputed information had been verified as accurate. Accordingly, Defendant informed Plaintiff it considered Plaintiff's new dispute as frivolous and stated it would not be investigating the dispute.

40.     To date, Defendant continues to wrongfully report the Account as belonging to Plaintiff on Plaintiff's credit reports.

41.     Defendant repeatedly failed to make a reasonable investigation into Plaintiff's

disputes.

42. Upon receipt of the ACDV responses, Defendant simply accepted the furnisher's verification of the Account and did not undertake to perform any investigation of its own.

43. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

44. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

45. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## **COUNT ONE**
(Fair Credit Reporting Act)

46.     The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 15 through 45 hereinbefore as if fully set forth herein.

47.     Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

48.     Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

49.     Defendant repeatedly failed to perform a reinvestigation of Plaintiff's disputes.

50.     Due to Defendant's failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to damages.

51.     As a result of Defendant's violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, anxiety, worry, fear, loss of sleep, family discord, anger, fright, frustration, physical pain and sickness, and mental anguish. Additionally, the damage to Plaintiff's credit caused him to be denied credit, precluded him from seeking further credit opportunities, and also caused him to not receive offers of credit. Plaintiff is

entitled to actual damages in an amount to be determined by the jury.

52.   In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53.   Plaintiff is entitled to his attorneys' fees and costs pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

54.   The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 15 through 53 hereinbefore as if fully set forth herein.

55.   Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

56.   Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

57.   Defendant willfully failed to perform a reinvestigation of Plaintiff's disputes.

58.   As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, anxiety, worry, fear, loss of sleep, family discord, anger, fright, frustration, physical pain and sickness, and mental anguish. Additionally, the damage to Plaintiff's credit caused him to be denied credit, precluded him

from seeking further credit opportunities and also caused him to not receive offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

60. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

61. Plaintiff is entitled to his attorneys' fees and costs pursuant to 15 U.S.C. §1681o(a)(2).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*  
Penny Hays Cauley, Fed. ID No. 10323  
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

　　　　　　　　　　　　　　　　*/s/ Penny Hays Cauley*
　　　　　　　　　　　　　　　　Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169